**FAMILY VIDEO MOVIE CLUB, INC., Appellant–Defendant/Cross– Appellee,**

v.

**HOME FOLKS, INC., Appellee– Plaintiff/Cross–Appellant.**

No. 03A05–0407–CV–361.

Court of Appeals of Indiana.

May 18, 2005.

Jeffrey L. Beck, Beck Harrison & Dalmbert, Columbus, IN, Attorney for Appellant.

Jason H. Guthrie, Sharpnack Bigley LLP, Columbus, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Family Video Movie Club, Inc. wanted to buy the building in which Home Folks, Inc. was a tenant. Family Video offered to pay Home Folks $35,000 to vacate the premises well before its lease expired. Before Home Folks accepted Family Video's written offer, the building burned to the ground. Nevertheless, Home Folks argued, and the trial court agreed, that a

valid contract existed requiring Family Video to pay the $35,000. On appeal, Family Video argues (1) that there was no valid contract and (2) if there was a valid contract, Home Folks could not perform its obligations under the contract because it no longer had a leasehold interest to terminate. Because the buyout offer expired when the building burned, we reverse.

### Factual and Procedural History

The evidence most favorable to the trial court's judgment shows that Home Folks operated a restaurant at 2110 Central Avenue in Columbus, on property owned by Henriette Todd Harrell, whose son, Tony Spachtholz, acted as her agent. Family Video approached Spachtholz midway through 2002 about purchasing the property for use as a video store.

Home Folks' lease ran through June 2005, and Family Video negotiated with Home Folks about buying out the lease at the same time it was negotiating with Spachtholz about purchasing the property. Late in 2002, Home Folks and Family Video agreed on some terms regarding a buyout, including the $35,000 price. The partial oral agreement was contingent and incomplete, and both parties knew that it was to be finalized in written form.

On November 25, 2002, Family Video sent a letter to Home Folks' operators, the Misners, outlining the proposed buyout. The Misners testified that the letter memorialized the oral agreement. The letter said the following:

As discussed, Family Video Movie Club, Inc. has entered into a Purchase Agreement to purchase said premises. We have the right to confirm our ability to replat the property, properly zone the property, and perform due diligence. Until a title has been delivered to us, and in the event we do not purchase said premises, you are obligated to fulfill the terms and conditions of your Lease Agreement with Anthony Spachtholtz [sic]. After closing, you will have ninety days (90) to vacate the premises. At such time that you vacate the premises and deliver possession to Family Video Movie Club, Inc., Family Video Movie Club, Inc. agrees to pay you the full sum of Thirty-five Thousand and 00/100 Dollars, ($35,000.00).

Appellant's App. p. 155. The letter contained a space for the Misners to sign, indicating "I agree with the above terms and conditions."

On February 1, 2003, the building housing Home Folks burned to the ground as a result of arson. The lease stated the following:

FOURTH: In the event the premises shall be destroyed or so damaged or injured by fire or other casualty during the life of this agreement, whereby the same shall be rendered untenantable, then the Lessor shall have the right to render said premises tenantable by repairs within ninety (90) days therefrom. If said premises are not rendered tenantable within said time, it shall be optional with either party hereto to cancel this lease, and in the event of such cancellation the rent shall be paid only to the date of such fire or casualty. The cancellation herein mentioned shall be evidenced in writing.

*Id.* at 152.

Two days after the fire, on February 3, 2003, the Misners signed the offer letter they had received from Family Video the previous November, indicating that they "agree[d] with" the terms and conditions of the buyout proposed by Family Video. They signed the offer letter on the advice of their attorney.

The next day, February 4, 2003, Home Folks' attorney wrote to Family Video's

representative, indicating "[w]e are cancelling the lease, conditioned upon payment of the agreed upon amount." *Id.* at 158. The day after that, February 5, 2003, the Misners wrote Spachtholz to state that Home Folks was cancelling the lease. The letter further stated: "This cancellation shall be conditioned upon the payment by the video store of $35,000 to relocate the restaurant. We have agreed to accept this sum to relocate." *Id.* Home Folks paid no rent after January 2003.

On March 5, 2003, Spachtholz wrote to the Misners, stating that he had received Home Folks' cancellation of the lease and "must agree that the building is completely untenantable and we don't foresee any possibility of Reconstruction within the 90 day period." *Id.* at 159. Spachtholz's letter stated that it also operated as cancellation of the lease.

Home Folks has sought payment of the $35,000 from Family Video, but no payment has occurred. The restitution order that was part of the sentence received by the arsonists requires that the arsonists pay Home Folks $35,000. Home Folks has as yet received no payment under that order.

Home Folks sued Family Video, alleging that a contract was formed and that Family Video should pay Home Folks the $35,000 contemplated by the contract. After a bench trial, the trial court concluded that a contract existed and ordered Family Video to pay Home Folks $35,000 in damages.

**Discussion and Decision**

Family Video argues that the trial court's judgment should be reversed because, the building having burned on February 1, there was no consideration for the contract when Home Folks accepted the offer on February 3. Alternatively, Family Video argues that Home Folks is not entitled to judgment because it was unable to fulfill a condition precedent to the contract and that its completion of the contract was impossible. In a purported cross-appeal, Home Folks argues that a valid oral contract was formed that bound Family Video to pay Home Folks. We address these arguments in turn.

The trial court entered special findings of fact and conclusions thereon *sua sponte* under Trial Rule 52. In reviewing the trial court's judgment, "we consider whether the evidence supports the findings and whether the findings support the judgment." *Berkel & Co. Contractors, Inc. v. Palm & Assocs., Inc.,* 814 N.E.2d 649, 658 (Ind.Ct.App.2004). Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.*

### I. The Contract Claim

Family Video argues that the trial court's conclusion that the written contract required Family Video to pay Home Folks is clearly erroneous because lack of consideration prevented a contract from being formed in the first place. A valid contract requires offer, acceptance, consideration, and manifestation of mutual assent. *Krieg v. Hieber,* 802 N.E.2d 938, 947 n. 3 (Ind.Ct.App.2004). A difficulty with Family Video's argument is that the lease was still in effect when Home Folks accepted Family Video's offer. Home Folks still possessed a leasehold interest in the property on February 3, 2003, when Home Folks executed the written acceptance. This interest may have constituted consideration even though both Home Folks and its landlord shortly thereafter agreed that the building could not be reconstructed under the terms of the lease, thus ending the tenancy.

■ We need not resolve that issue because this appeal may be decided on another basis. As a matter of law, the fire that destroyed the building over which Family Video and Home Folks had bargained should be deemed to terminate Home Folks' time to accept Family Video's offer to buy out the lease. Because the offer expired before it was accepted, no contract was formed. The trial court's judgment therefore is erroneous. *See, e.g., Collections, Inc. v. Wolfe*, 818 N.E.2d 14, 16 (Ind.Ct.App.2004) (holding judgment is erroneous when it applies incorrect legal standard to properly found facts).

■ Unless an offer to form a contract specifically states how long it is open to acceptance, an offer is open only for a reasonable time. *Field v. Alexander & Alexander of Ind., Inc.*, 503 N.E.2d 627, 630 (Ind.Ct.App.1987), *trans. denied*. A reasonable time "is the time that a reasonable person in the exact position of the offeree would believe to be satisfactory to the offeror." 1 Joseph M. Perillo, *Corbin on Contracts* § 2.16, at 203–04 (rev. ed. 1995 & 2004 Supp.). How much time is reasonable for an offeree to accept an offer depends on the facts of each case. "The purpose of the offeror, to be attained by the making and performance of the contract, will affect the time allowed for acceptance, if it is or should be known to the offeree. In such case there is no power to accept after it is too late to attain that purpose." *Id.* at 211.

In this case, Family Video clearly bargained for Home Folks to abandon its interest in the leasehold well before Home Folks' lease would otherwise terminate.

The fiery destruction of Home Folks' building made it impossible for Family Video to get what it had bargained for. The unexpected and premature destruction of a significant portion of the subject matter of the offer made it unreasonable to continue the time for Home Folks to accept the offer. Also, because Home Folks knew Family Video's purpose in "the making and performance of the contract," *id.*, Home Folks was on notice that it was no longer a reasonable time to accept the offer once the structure ceased to exist.

■ Moreover, "[t]he power of acceptance may be terminated by the death or destruction of a person or thing essential for performance...." *Restatement (Second) of Contracts* § 36, cmt. c. In this case, the destruction by fire of the structure subject to Home Folks' leasehold terminated Home Folks' time to accept Family Video's offer. The structure's existence was "essential for performance" of the contract, and Home Folks lost its capacity to accept the offer from Family Video when it was destroyed by fire.[1]

This principle is illustrated by *White v. Arizona Property & Casualty Insurance Guaranty Fund*, 189 Ariz. 378, 943 P.2d 738 (Ariz.Ct.App.1997), *vacated in part on other grounds*, 190 Ariz. 526, 950 P.2d 1147 (Ariz.1997), where an insurance company became insolvent after offering to settle a particular claim. As a result of the insolvency, the company was under court order not to dispose of any assets. The court held that the insolvency order terminated the offeree's power of acceptance because it imposed a legal impediment to the insurer's ability to pay the settlement. *Id.* at

---

1. The trial court made neither findings nor conclusions relating to this alternative basis for finding that no contract was formed in this case. This alternative basis for our decision is related to Family Video's argument that the trial court's judgment should be reversed because it had become impossible for Home Folks to fulfill its contractual duty. Appellant's Br. at 20–23. Impossibility excuses breach of an executory contract. In this case, however, no contract was formed so there was no breach.

744. *White* is similar to this case, where an event occurred after the offer but before the acceptance that terminated the offeree's power of acceptance because something essential to the contract's performance was destroyed. This conclusion is buttressed by the well-established line of cases holding that the offeree's power of acceptance is terminated by the death of the offeror. *See, e.g., Heideman v. Northwestern Nat'l Life Ins. Co.,* 546 N.W.2d 760, 764 (Minn.Ct.App.1996), *rev. denied; Lewis v. Motorists Ins. Cos.,* 96 Ohio App.3d 575, 645 N.E.2d 784, 790 (1994). Because the structure, an element essential to the achievement of the purpose of the contract, was destroyed before Home Folks accepted the offer, the power of acceptance was terminated and no contract was formed.

■ Home Folks raises as an alternative ground for affirmance that the parties had a valid oral contract requiring Family Video to pay Home Folks $35,000 to buy out its lease.[2] On this issue, the trial court found "[i]n October or November of 2002 a discussion took place wherein [Family Video] and [Home Folks] agreed to some terms with the understanding that Defendant would send a written document." Appellant's App. p. 5. This finding is supported by the evidence and not clearly erroneous. While the evidence indicated that Home Folks believed that the oral agreement was complete, the evidence also showed that Family Video's witnesses believed some terms remained unsettled and that a written contract was required to finalize the agreement. The evidence supports the trial court's finding, which indicates that no oral contract was formed.

In sum, the trial court's conclusion that there was a valid written contract is clearly erroneous because Home Folks' power to accept Family Video's offer was terminated when the structure housing Home Folks' restaurant was destroyed by fire. Also, the trial court's finding supporting the conclusion that there was no oral contract is not clearly erroneous. We reverse the trial court's judgment because no valid contract existed between Home Folks and Family Video.

## II. Cross–Appeal

■ Home Folks cross-appealed on whether "the parties entered into an enforceable and binding oral agreement." Appellee's Br. p. 1. No cross-appeal is available in this case because there is no appealable judgment or order against Home Folks. *See, e.g., Stump v. Indiana Equip. Co., Inc.,* 601 N.E.2d 398, 400 (Ind. Ct.App.1992) (dismissing cross-appeal because there was no appealable judgment against purported cross-appellant), *trans. denied; see also* Ind. Appellate Rule 5 (listing types of orders and judgments subject to appeal).

In the absence of an adverse, appealable order or judgment, Home Folks is entitled to no separate appeal from the trial court's failure to find as a fact that there was a valid, oral agreement between the parties. *See* Appellant's App. at 5–6 (trial court's judgment contains no finding or conclusion that a valid, oral contract existed). Rather, Home Folks may argue the oral agreement as an alternative basis for affirming the trial court's judgment, as discussed in the previous section of this opinion. *Whitley County Teachers Ass'n v. Bauer,* 718 N.E.2d 1181, 1186 (Ind.Ct.App.1999) (holding appellate court may "affirm a judgment on any theory presented by the case"), *trans. denied.* We therefore dis-

---

**2.** The procedural posture of this issue on appeal is addressed in the next section of this opinion.

miss the cross-appeal, rendering moot Family Video's motion to strike a portion of the Cross–Appellant's Reply Brief.

The trial court's judgment is reversed, and this case is remanded for entry of judgment in favor of Family Video.

KIRSCH, C.J., and NAJAM, J., concur.