Johnny H. TIGNER, Appellant–Respondent,

v.

Linda TIGNER, Appellee–Petitioner.

No. 64A04–0706–CV–300.

Court of Appeals of Indiana.

Dec. 19, 2007.

Susan Kozlowski, Kozlowski Law Offices, Crown Point, IN, Attorney for Appellant.

Laura Wyatt, Chesterton, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Johnny Tigner ("Father") appeals the trial court's judgment ordering him to pay Linda Tigner ("Mother") $17,434.44 toward the cost of drug and alcohol treatment for their daughter, seventeen-year-old J. Father raises three issues for our review, which we consolidate and restate as whether the trial court properly ordered Father to pay these expenses. Concluding that the trial court erroneously required Father to prove the expenses were not reasonable and necessary, we reverse and remand.

### Facts and Procedural History

The Tigners' marriage was dissolved in 2000. Pursuant to a Marital Settlement Agreement, the parties shared joint legal custody of their two daughters, and Moth-

er had physical custody of both girls. Also pursuant to the terms of the Agreement, Mother was to pay the first $1,207.44 of the children's uninsured medical and counseling expenses each year and Father was to pay 53.96 percent of the balance of annual uninsured expenses.

In September 2002, J. attempted suicide. Five days later, Mother took J. to Pathway Family Center for treatment. Although Mother was required to pay Pathway a $30,000.00 deposit, she believed her insurance would pay eighty percent of the Pathway program's costs. After paying the deposit, and learning that her insurance would not cover the costs of the program, Mother sought reimbursement from Father for 53.96 percent of the costs.

Father refused to pay Mother for several reasons. First, Father complained that Mother did not consult with him about placing J. at Pathway. Further, although Pathway was out of his insurance policy's network, similar programs would have been covered by his policy, and the parties could have placed J. in one of these programs had Mother consulted with him.

Mother subsequently filed a petition asking the trial court to order Father to pay her 53.96% of the Pathway program's fees. Following a hearing, the trial court entered the following order:

2. As a result of an attempted suicide and other erratic behavior by one of the parties' daughters, Mother placed her in an in-patient [1] treatment facility (Pathway Family Center). The child was a resident there for fifteen (15) months at a cost of over Thirty Thousand Dollars ($30,000.00).

3. As Pathway was not within the "network" of Father's health care insurance provider, claims submitted to this carrier were denied.[2]

4. . . . Mother now seeks reimbursement of pro-rate share [of expenses]. Father counters that had Mother chosen an approved provider or obtained preapproval through his insurance, the out-of-pocket expense could have been greatly reduced.

5. Father has not established, however, that the foregoing options were available to the parties under these extreme circumstance[s]; nor that Mother acted in any way unreasonably. The "6% Rule" as detailed in the Indiana Child Support Guidelines, and adopted by the parties herein, was designed specifically to address situations such as this, when insurance is not available. Accordingly, the court adopts [Mother's] Exhibit 3 as representative of the costs incurred and paid by Mother, with the

1. Mother testified that the program was an out-patient program and that beginning in January, after J. was admitted to the program in October, her insurance no longer covered out-patient substance abuse treatment. Tr. at 21, 23. Although it was an out-patient program, J. did not spend the nights and weekends at home; rather, she "went home with parents in the program." Id. at 22.

2. It appears that both parties were insured by Blue Cross Blue Shield and both parties carried insurance on their children. Mother testified that after J. attempted suicide, she contacted J.'s doctor, who recommended Pathway. Tr. at 8. Mother believed when she

admitted J. to Pathway that her insurance would cover eighty percent of the program's cost. Id. at 21. Instead, the only insurance payment of which she is aware is a one-time payment of approximately $2,100 for the period from October 4, 2002 to October 31, 2002, paid directly to Pathway and refunded to her because of her pre-payment. Id. at 21, 23. Father testified that after Mother told him J. was admitted to Pathway, he consulted his union representative about insurance coverage and was told that because Pathway was out-of-network, the cost of J.'s participation in the program would not be covered. Id. at 41.

exclusion of the One Thousand Three Hundred Dollar ($1,300.00) income tax savings which she realized by deducting the excess medical expenses. Father's obligation, therefore, is ... Seventeen Thousand Four Hundred Thirty–Four Dollars and 44/100 ($17,434.33).

Appellant's Appendix at 4–5. Father now appeals.

*Discussion and Decision* [3]

I. Standard of Review

 On appeal of claims tried by the court without a jury or with an advisory jury, at law or in equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Ind. Trial Rule 52(A). Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Family Video Movie Club, Inc. v. Home Folks, Inc.*, 827 N.E.2d 582, 585 (Ind.Ct.App.2005). A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.*

II. Father's Obligation to Pay Medical Expenses

Father contends that the trial court's order is not supported by the evidence and is contrary to law. Father first contends that the trial court's order was, in effect, a retroactive change from joint custody to sole custody in Mother. "Joint legal custody ... means that the persons awarded joint custody will share authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, health care, and religious training." Ind.Code § 31–9–2–67; *see also Tarry v. Mason*, 710 N.E.2d 215, 217 (Ind.Ct.App.1999), *trans. denied.* The testimony from the hearing is conflicting: Mother testified that when she called Father about J.'s attempted suicide, she told him that she was taking J. to Pathway and Father suggested J. come to live with him instead; whereas Father testified that Mother said nothing about Pathway when she called him and he did not know where J. was for two to three weeks after she was admitted to Pathway. *See* Tr. at 8–9, 36, 39. Regardless of the actual content of the conversation, it is clear there was no meaningful discussion between Mother and Father about the decision to admit J. to Pathway.

 Although we do not condone Mother's unilateral decision with regard to J.'s treatment, we do not think the trial court's order effectuated a change in legal custody.[4] Father did not get an opportunity to

---

3. Mother has not filed an appellee's brief. When an appellee fails to submit a brief, we will not "undertake the burden of developing arguments for the appellee." *In re Paternity of B.D.D.*, 779 N.E.2d 9, 13 (Ind.Ct.App. 2002). In these situations, "[w]e apply a less stringent standard of review with respect to showings of reversible error, and we may reverse the trial court's decision if the appellant can establish prima facie error." *Id.* In this context, prima facie error is defined as "at first sight, on first appearance, or on the face of it." *Id.* (citations omitted).

4. Mother's conduct may have been relevant in the context of a subsequent petition to modify custody alleging that joint custody was no longer reasonable because of changed circumstances. *See* Ind.Code § 31–1–11.5–2–21(a) ("The court may not modify a child custody order unless: (1) the modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under [Indiana Code section 31–17–2–8]...."). However, we note that Mother and Father stipulated at the hearing that their children were emancipated and questions of legal custody thereafter became moot. Appellant's App. at 4.

participate in the decision-making in this instance, and we acknowledge that it turned out to be an expensive decision. We also must acknowledge, however, that when Mother admitted J. to Pathway, she did so pursuant to a doctor's recommendation and with the belief that insurance would cover the majority of the expense. Mother could have sought pre-approval from insurance—she did not admit J. to Pathway until five days after her attempted suicide—or at least definitively found out what insurance would cover, and if Father had been consulted, he could have done the same through his insurance. However, there is no evidence that Mother's decision was a deliberate attempt to circumvent the requirements of the joint custody arrangement or that Mother made further decisions unilaterally. In addition, even if the trial court's order was a de facto change of custody, that would have no bearing on Father's obligation to contribute to medical expenses.[5]

Father also contends that the trial court erred in concluding that Father failed to establish that the Pathway program's expenses were neither reasonable nor necessary. We note first that the trial court's conclusion that the " '6% rule' as detailed in the Indiana Child Support Guidelines, and adopted by the parties herein, was designed specifically to address situations such as this, when insurance is not available" is not a correct statement. Commentary to Indiana Child Support Guideline 3 makes it clear that the child support obligation as determined by the Guidelines includes a component for ordinary medical expenses. "Specifically, six percent (6%) of the support amount is for health care. The noncustodial parent is, in effect, prepaying health care expenses every time a support payment is made." Commentary to Ind. Child Support Guideline 3(H). The six percent rule, then, is designed to ensure that the non-custodial parent does not pay twice for the same medical expenses.[6]

Child Support Guideline 3(H) defines "[e]xtraordinary health care expenses [as] those uninsured expenses which are in excess of six percent (6%) of the basic obligation, and would include uninsured expenses for chronic or long term conditions of the child." Research has disclosed no Indiana case specifically addressing whether uninsured medical expenses must be reasonable and necessary before the non-custodial parent is required to contribute and if so, which party has the burden

---

5. In this regard, this case differs from *Andrews v. Andrews*, 531 N.E.2d 219 (Ind.Ct. App.1988), which Father cites in support of his argument. In *Andrews*, the father was ordered to provide medical insurance for his daughter upon his divorce from the mother. No provision was made for payment of expenses not covered by insurance. When the mother later enrolled the daughter in a hospital for drug and alcohol abuse, she did not contact the father, nor did she enroll the daughter in a hospital fully covered by insurance, instead enrolling her in a hospital at which she incurred a substantial bill. The trial court granted the mother's petition for payment and ordered the father to pay part of the outstanding medical bill. On appeal, we held that because the mother had not petitioned for modification of the support provisions of the decree, the trial court was without authority to do so. *Id.* at 220. We also noted that even if the mother had filed a petition to modify, modification could only operate prospectively. *Id.* Here, Father's support obligation with respect to medical expenses is not limited by the decree to merely maintaining insurance on J. but includes a specific provision regarding payment of uninsured expenses.

6. Assuming the figures on which the trial court was basing its calculations were correct, which we will address below, the trial court did correctly apply the six percent rule to the medical expenses by subtracting Mother's six percent obligation from the total and then applying the appropriate percentage to figure Father's obligation.

of proof. The trial court allocated the burden of proof to Father as the party contesting payment to prove the expenses were not reasonable or necessary. In tort law, however, the party seeking to recover medical expenses must prove that the expenses were both reasonable and necessary. *Wilkinson v. Swafford,* 811 N.E.2d 374, 386 (Ind.Ct.App.2004), *abrogated in part on other grounds by Willis v. Westerfield,* 839 N.E.2d 1179 (Ind.2006). The burden is not on the other party to show such expenses are not reasonable or necessary. *See id.* We believe this is a reasonable rule to apply in this situation as well, and hold that Mother had the burden to prove that J.'s medical and counseling expenses were reasonable and necessary. We do not mean to imply that the reasonableness and necessity of extraordinary health care expenses should be litigated as a matter of course, but when such expenses are challenged, we believe this is the appropriate way in which to allocate the burden in resolving the issue. This is especially true in circumstances such as presented by this case: the parties shared joint custody but did not share in the decision-making regarding treatment and there is a claim that the medical expenses could have been avoided or mitigated if an alternative course of treatment had been chosen.[7] The trial court erred in allocating the burden to Father.

Father also contends that the trial court erred in including non-medical expenses and expenses covered by insurance in its calculation of Father's obligation. The exhibit on which the trial court relied as "representative" of the costs incurred and paid by Mother is a handwritten document that reads as follows:

| E Trade | | $30,000:00 |
|---|---|---|
| Payments | | 6,999.26 |
| Car [8] | [ − ] | 3,000.00 |
| | | 3,999.26 |
| Amount Owed | [ + ] | 29,878.12 |
| | | 33,877.38 |
| Cash Payment | [ + ] | 940.00 |
| | | 34,817.38 |
| Annual Deductible | [ − ] | 1,207.44 |
| | | 33,609.94 |
| Father's Share | [ × ] | 53.96% |
| | | 18,135.92 |

Petitioner's Exhibit 3. Mother testified that Pathway offered a discount if she paid for J.'s treatment up front. Pathway was designed to be a year-long program costing $30,000. If the entire $30,000 fee was paid in advance, and it took longer than one year for J. to graduate from the program, Pathway would not charge any additional amounts for the extended stay in the program. Mother testified that she paid $2,940 to Pathway when J. was admitted to the program. Two weeks later, she paid Pathway an additional $28,000 from a $30,000 home equity line of credit she obtained.[9] Insurance paid $2,170.40

---

7. We do not disagree with the dissent that "[w]e should discourage unilateral action by either parent in breach of the custody order." We believe in reversing the trial court's order and remanding for Mother to justify the expenses (and therefore her actions) as reasonable and necessary, we are discouraging unilateral action while simultaneously acknowledging that there are rare circumstances in which such action might be appropriate.

8. Mother testified she used some of the funds from the home equity line of credit to purchase a more reliable car for visiting J. while she was in the Pathway program. It does not appear that Mother or the trial court included the $3,000.00 cost of the car in the calculation of Father's obligation, and we note that doing so would be clearly improper as a car is not a medical expense to which Father would be obligated to contribute.

9. Mother also testified that she made several additional payments during J.'s stay at Pathway for "[s]chool, recovery books, urinalyses on a weekly basis." Tr. at 25. Father, too, was required to make payments when he participated in the program. *Id.* at 26. However, prior to the hearing, the parties "agreed

toward the Pathway program for services provided in October of 2002.[10] Respondent's Exhibit 3. Mother acknowledged that the insurance payment was not reflected in Exhibit 3 but should have been. *See* Tr. at 31. In addition, Mother testified her income tax liability was reduced by $1,300.00 by deducting the medical expenses, but that amount was not reflected in Exhibit 3. *Id.* at 34.

The trial court adopted the amounts shown in Exhibit 3 in calculating Father's obligation, with the exception that the trial court subtracted the $1,300.00 tax savings to Mother before applying the percentage for determining Father's share. Appellant's App. at 4–5. However, Mother's testimony and other exhibits provide very little support for Exhibit 3. There is no explanation for the "payments" of $6,999.26, or for the "cash payment" of $940.00. In addition, there is no apparent basis for the "amount owed" figure of $29,878.12. The trial court also failed to account for the $2,170.40 insurance payment that Mother admitted should have been included as a credit in Exhibit 3. If on remand the trial court concludes that Mother has met her burden of proof, the trial court should recalculate Father's obligation by including only those amounts shown to have been paid for medical treatment and deducting from those amounts the insurance payment in addition to the other appropriate deductions.

### Conclusion

The trial court erred in concluding that Father had the burden to prove J.'s medical and counseling expenses were neither reasonable nor necessary and erred in its calculation of the amount of Father's obligation. The trial court's judgment is, therefore, reversed, and we remand to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

BARNES, J., concurs.

KIRSCH, J., dissents with opinion.

KIRSCH, Judge, dissenting.

I respectfully dissent because I believe there is an important issue in the case that the majority does not address: Namely, what is the effect of Mother's breach of the provisions of the Decree of Dissolution regarding shared custody?

Here, the essential facts are undisputed. Mother acted unilaterally in placing the parties' daughter at a facility that was not

---

that all those on-going charges we're not going to go back over and try to figure out what's going on because it would just be too difficult to do so...." *Id.* at 31. We are therefore concerned only with the lump-sum payment Mother made at the outset of J.'s treatment at Pathway.

10. Father contends that evidence was introduced of insurance payments of $4,690.00 for October of 2002 that should have been deducted from the amount of uninsured medical bills. *See* Appellant's Brief at 11–12. It appears that Father got that figure from an Explanation of Benefits form sent to Mother and admitted as Respondent's Exhibit 3. On page 2 of the form, it appears that the column headings are misaligned over the columns showing amounts charged, allowed, paid, and owed, such that under a column titled "What We Paid," the figure "$4,690.00" appears. However, it is clear from the remainder of the form that the $4,690.00 figure should be under a column titled "You Owe the Provider," and "What [Insurance] Paid" is actually $2,170.40. *See* Respondent's Exhibit 3, page 2 ("Your responsibility to the provider(s) is $4,690.00. We paid $2,170.40. The provider can collect $4,690.00 from you for these services.").

In addition, we note that there is no evidence—and Father has provided no citation to the record pointing to such evidence—supporting Father's assertion that "Mother's insurance paid $6,100.00 directly to Pathways." Appellant's Br. at 12.

covered by the parties' medical insurance. Such unilateral action was a breach of Mother's obligations under the shared custody order of the court and the parties' own settlement agreement. Mother has not offered any justification for taking such unilateral action. Had Mother complied with her obligations, the tremendous costs of the placement at an uninsured facility may have been avoided. Father was never afforded the opportunity to participate in the decision-making that may have avoided such placement and such costs.

I believe it is not only unfair, but also bad policy to allocate any of the expenses of the placement to Father. Mother acted unilaterally in breach of the court's order and the parties' parenting agreement. In the absence of a legal justification for doing so, she should be solely responsible for the costs of doing so. We should adopt policies that encourage parents to cooperate and communicate—particularly, those who share custody of their children. We should discourage unilateral action by either parent in breach of the custody order. By making it possible for a parent who has breached the shared custody order by acting unilaterally to re-coup the costs of doing so from the other party, courts do just the opposite.

I would reverse the trial court's order and remand with instruction to enter judgment for Father.