# IN THE COURT OF APPEALS OF IOWA

No. 18-0381
Filed March 6, 2019

IN RE THE MARRIAGE OF CHRISTOPHER DAUTERIVE
AND TRICIA DAUTERIVE

Upon the Petition of
CHRISTOPHER DAUTERIVE,
      Petitioner-Appellee,

And Concerning
TRICIA DAUTERIVE,
      Respondent-Appellant.

_____

Appeal from the Iowa District Court for Polk County, David M. Porter, Judge.

A former wife appeals a district court order on cross requests to modify the custody and support aspects of a dissolution decree. **AFFIRMED AS MODIFIED.**

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, PC, West Des Moines, for appellant.

Alexandra M. Nelissen of Taylor Law Offices, PC, Des Moines, for appellee.

Considered by Tabor, P.J., and Mullins and Bower, JJ.

**TABOR, Presiding Judge.**

Tricia Dauterive and her former husband, Christopher Dauterive, have joint legal custody and joint physical care of their now sixteen-year-old daughter, L.D. Tricia appeals the district court's continuation of the shared-care arrangement. She also contends the district court wrongly ordered her to pay all of L.D.'s orthodontia expenses and miscalculated child support and the parties' respective shares of unreimbursed medical expenses. Finally, she contests the award of trial attorney fees.

Because Tricia did not show ending the shared-care arrangement would be in L.D.'s best interests, we affirm that provision of the modification ruling. But we reverse the order holding Tricia solely responsible for L.D.'s orthodontia, reverse the award of trial attorney fees, and remand for recalculation of child support and the parties' obligations for unreimbursed medical expenses.

## I.    Facts and Prior Proceedings

Tricia and Christopher divorced in March 2014. The decree awarded them alternating weeks of "shared parenting time" with their three children, who were all under eighteen years of age at that time. In April 2014, the district court approved the parties' stipulation agreeing Tricia would provide health insurance and the parties would spilt uncovered medical expenses based on their respective incomes with Tricia paying twenty-seven percent and Christopher paying seventy-three percent.

One year later, in April 2015, Tricia moved to modify the physical-care and child-support provisions of the decree. Tricia also applied for a custody evaluation,

which the court granted.[1]  The modification action did not receive a hearing in the district court for more than two years.  In the interim, the parties filed numerous contempt actions against one another, clashing over custody, support, and medical expenses for the children.  Among the contentious issues was orthodontia for L.D., the youngest child.

By the time of the modification hearing in August 2017, Christopher was also asking to modify the custody provisions of the decree.  Of the parties' children, only L.D. was still a minor.  In his testimony, Christopher asked for sole legal custody of L.D. because co-parenting decisions were "almost impossible to reach." By contrast, Tricia sought physical care of L.D. rather than sole legal custody.

In its February 2018 modification order, the district court ultimately determined the question was one of legal custody rather than physical care.  The court was "firmly convinced that [Tricia's] recalcitrance has rendered the current joint legal custody arrangement unworkable."  The modification order maintained joint legal custody subject to certain conditions, including a more structured system for joint decision-making on medical treatment.[2]  On this front, the district court explained, "Determination[s] regarding 'necessary medical treatment' shall be decided by: (1) the medical provider; (2) written consent of the parties; (3) [an appointed parenting coordinator]; and (4) the Court."  The court did not address physical care in its analysis, but did deny Tricia's petition to modify the joint physical care arrangement.

---

[1] Dr. Keri Kinnaird, a psychologist, conducted the custody evaluation in February 2016. She noted parental behavior causing stress for the children, but did not recommend "a change in the current access plan."  Neither party called Dr. Kinnaird at trial.
[2] Christopher does not cross appeal any aspect of the modification order.

In June 2018, the district court ordered Tricia to pay $10,000 toward Christopher's trial attorney fees. Our supreme court granted Tricia's request to consolidate her appeals of the modification ruling and the attorney-fee order.

## II. Scope and Standards of Review

We review rulings on motions to modify dissolution decrees de novo. Iowa R. App. P. 6.907; *In re Marriage of Beecher*, 582 N.W.2d 510, 512 (Iowa 1998). "We examine the entire record and adjudicate anew rights on the issues properly presented." *Beecher*, 582 N.W.2d at 512–13. "We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them." *Id.* at 513.

"Because interpretation of child support guidelines is a legal question, our review of such interpretation is for errors at law." *In re Marriage of McCurnin*, 681 N.W.2d 322, 327 (Iowa 2004).

On the question of attorney fees, we review the district court's award for an abuse of discretion. *In re Marriage of Maher*, 596 N.W.2d 561, 568 (Iowa 1999).

## III. Discussion

### A. Joint Physical Care

In the district court, Christopher asked to modify the joint legal custody and physical care provisions of the decree; Tricia sought to modify only joint physical care. *See* Iowa Code §§ 598.1(3), (4) (2015). The district court's ruling on the parties' cross-modification requests analyzed legal custody under Iowa Code section 598.1(5) but not physical care under section 598.1(7). Nevertheless, at the end of the ruling, the court denied Tricia's petition, leaving joint physical care in place. On appeal, Tricia challenges the continuation of joint physical care.

Because both concepts were at play in the modification proceedings, we will touch on the difference between legal custody and physical care. *See In re Marriage of Hansen*, 733 N.W.2d 683, 690–91 (Iowa 2007) (explaining important distinctions between the two provisions). "Legal custody" carries with it certain rights and responsibilities, including but not limited to making decisions "affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction." Iowa Code §§ 598.1(3), (5). In contrast, "physical care" "means the right and responsibility to maintain a home" and "provide for routine care of the child." *Id.* §§ 598.1(4), (7). Despite this distinction, our supreme court has held the custody factors in Iowa Code section 498.41(3) are relevant to determining which physical care arrangement is in a child's best interests. *See Hansen*, 733 N.W.2d at 696 (highlighting additional considerations listed in *In re Marriage of Winter*, 223 N.W.2d 165, 166 (Iowa 1974)).

Here, Tricia has the heavy burden of showing modification of joint physical care is appropriate. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). Her burden is two pronged: First, she must show conditions since entry of the decree have materially and substantially changed such that it is expedient to request the modification, and the changes were not contemplated by the court when entering the decree, are more or less permanent, and relate to L.D.'s welfare. *See id.* And second, she must prove she is better equipped than Christopher to be the primary physical caretaker. *See id.*

Tricia contends the "never-ending acrimony" between her and Christopher and their inability to communicate constitutes a sufficient change in circumstances to undo the shared-care arrangement. Tricia agrees with the district court's view

she and Christopher were allowing their "toxic relationship" to stand in the way of effectively "co-parenting" L.D. But she disagrees with the court's assessment she was the source of the current "toxicity."

We have held "[d]iscord between parents that has a disruptive effect" on a child's life may be "a substantial change of circumstance that warrants a modification of the decree to designate a primary physical caregiver if it appears that . . . by having a primary physical caregiver," the child "will have superior care." *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002) (citing *In re Marriage of Walton*, 577 N.W.2d 869, 870 (Iowa Ct. App. 1998)); *see also In re Marriage of Harris*, 877 N.W.2d 434, 441 (Iowa 2016) (modifying joint physical care provision because "depth of [the parents'] animosity toward each other [was] not lost on the children"). This record shouts discord between the parents. But the discord's disruptive effect on L.D. is not pronounced. Tricia testified the main source of contention between her and Christopher was finances. Tricia did not testify the parental strife was negatively impacting L.D.

Christopher testified L.D. told him she was "well-adjusted," and the custody evaluator confirmed that view. And although he was asking for primary physical care, Christopher testified he was not actually in favor of changing the parenting schedule: "[L.D.] really enjoys seeing us both. I believe that she needs us both in her life and, I don't think necessarily that the time with each of us was ever an issue."

In our de novo review of the record, we do not find a substantial change in circumstances warranting ending the joint physical care arrangement and placing L.D. in Tricia's primary physical care. When the absence of parental cooperation

in a joint physical care setting undermines the children's welfare, modification is appropriate. *See Harris*, 877 N.W.2d at 442 (detailing how parties' "discordant perceptions" of their children's developmental issues led to an "unacceptable impasse"). But this case is not like *Harris*.[3] The record does not show L.D.'s well-being was imperiled by the acrimony between Christopher and Tricia.[4] Accordingly, we affirm the district court's decision not to modify the joint physical-care arrangement.

### B. Orthodontia Expenses

Tricia next challenges the district court's decision holding her solely responsible for L.D.'s orthodontia expenses. She characterizes that ruling as a permanent modification of the parties' obligations in the dissolution decree without support in the record. *See generally In re Marriage of Maher*, 596 N.W.2d 561, 565 (Iowa 1999) (emphasizing district courts have "reasonable discretion in determining whether modification [of child support] is warranted, and we will not disturb that discretion unless there is a failure to do equity").

The decree required the parents to consult with each other before taking action on medical matters for the children. The decree defined "medical expenses" as including "reasonably necessary" orthodontia. And the decree directed the parties to split uncovered medical expenses based on their respective incomes.

---

[3] Additionally, in *Harris*, the custody evaluator recommended an end to the shared-care arrangement. 877 N.W.2d at 442 n.4 (citing passage from report blaming "unrelenting anger" of parents for "inconsistent care and instability" for children).

[4] Tricia also faults Christopher for "instability" because he moved three times while she, having been awarded the marital home, has been more stable in her housing. Again, the record does not disclose Christopher's moves negatively impacted L.D.'s well-being.

At a July 2016 contempt hearing, Tricia offered orthodontics bills Christopher refused to help pay. She testified Christopher "disagreed with [L.D.] getting braces." But after receiving an opinion from the orthodontist the treatment was "medically necessary" Tricia went ahead and "put braces on my daughter."

In August 2016, the district court issued two orders: one holding Tricia in contempt for failing to communicate with Christopher regarding L.D.'s "dental care" and mental health counseling, and one holding Christopher in contempt for failing to pay unreimbursed medical expenses.

In September 2016, as a self-represented litigant, Tricia sought "a court order regarding medical care." Her motion outlined the parents' disagreement over L.D.'s orthodontia. She asserted Christopher had the chance to attend consultations with the orthodontist but declined. Tricia also alleged she provided Christopher with a written opinion from the orthodontist describing the treatment as medically necessary for L.D.[5] After a November 2016 hearing, the district court decided Tricia could continue taking L.D. to the orthodontist but would be responsible for the cost until the court ordered otherwise. The district court left the cost issue open for the pending modification action.

---

[5] Dr. Rousch wrote:

> To whom it may concern: [L.D.] has a Class I malocclusion with moderate mandibular arch length discrepancy and a deep overbite. This functionally adverse malocclusion, if left uncorrected, may lead to excessive enamel wear and destruction of mandibular incisors. Orthodontic treatment is, therefore, deemed medically necessary for the longevity and health of her dentition.

Tricia testified when she asked the orthodontist to explain in lay terms what would happen without treatment, he said, "[B]asically, if [L.D.] did not get orthodontia, her bottom teeth would wear down to nubs."

At the modification hearing, Tricia revisited the orthodontia issue. She testified, "I feel it was addressed in the original divorce decree when it stated that routine medical is covered, and it outlined the split of expenses for that."

When Tricia's counsel asked Christopher if he believed L.D. needed orthodontics care, he replied, "I believe that, eventually, she would have needed it, but at that time, it was not necessary." Christopher continued to question the orthodontist's opinion that the treatment was medically necessary: "I believe that if you go and ask an orthodontist, they're probably going to lean towards putting in braces."[6] Christopher quoted his conversation with their family dentist, who allegedly said in 2016 that L.D.'s orthodontia could be "put off for a year or two." Christopher testified Tricia asked him to pay "roughly 75 percent of $5000" due for orthodontia. He clarified he "supported eventually getting orthodontia" but was not in agreement with the cost or timing of the treatment.

In a single paragraph in his appellee's brief, with no citation to the record or legal authority, Christopher defends the district court's decision to hold Tricia solely responsible for L.D.'s orthodontia costs. Christopher claims the district court "correctly ruled that orthodontia at the time was not medically necessary."

That exact finding does not appear in the district court's modification ruling. Instead, the district court expressed its frustration with Tricia's unilateral decision to go ahead with L.D.'s orthodontia in the face of Christopher's disagreement. The district court bemoaned it had "repeatedly explained to [Tricia] that she is not the final arbiter regarding 'medically necessary' procedures or treatments for the minor

---

[6] With Christopher's agreement, the same orthodontist had provided treatment for a similar condition diagnosed in the parties' older son during the marriage.

child." In July 2016, the district court told Tricia she would be in violation of a court order if she "moved forward with a procedure that you believed to be medically necessary that, quite frankly, a dentist or an orthodontist says is medically necessary, but the other half of the decision-making process disagrees with it."

To resolve Tricia's claim, we start with the Iowa Child Support Guidelines. They define "medical expenses" as including "reasonably necessary . . . orthodontia." Iowa Child Support Guidelines R. 9.12(5). The parties' decree contained the identical definition. So the question at the modification hearing was whether Christopher had to share in the costs of L.D.'s orthodontia because the treatment was "medically necessary" within the meaning of the court rules and the decree. The question was not whether Tricia should be held in contempt for securing the treatment over Christopher's objection.

The district court's modification ruling cited Tricia's unilateral decision-making as the reason the November 2016 order held her solely responsible for the costs of L.D.'s orthodontia. But the district court did not explain why L.D.'s orthodontia was not medically necessary and therefore subject to the decree provision.

We recognize joint legal custody ensures both parents have "equal participation" in decisions affecting a child's medical care.[7] *See* Iowa Code § 598.1(3). But equal participation does not mean one parent has veto power in determining whether a course of treatment is medically necessary and therefore a shared expense if not covered by health insurance. Likewise, one parent does not

---

[7] The record shows Tricia offered Christopher an opportunity to participate in a consultation with the orthodontist, but Christopher declined the invitation.

automatically forfeit the right to recover funds from the other parent by seeking treatment for a child against the other parent's wishes, if the treatment proves to be medically necessary. *See generally In re Marriage of Demmer*, No. 99-0665, 2000 WL 378265, at *2 (Iowa Ct. App. Apr. 12, 2000) (rejecting father's claim "he should not be responsible for half the cost of orthodontic braces for the children because he was neither consulted before authorization of such treatment nor was it made clear to him whether braces constitute necessary medical and dental care").

Tricia proved the orthodontia expenses for L.D. were reasonably necessary. *See Tigner v. Tigner*, 878 N.E.2d 324, 329 (Ind. App. 2007) (placing burden on mother who unilaterally decided to seek treatment for daughter to show medical expenses were reasonable and necessary). The family's orthodontist described his course of treatment as "medically necessary" for L.D.'s dental health.[8] Christopher's idiosyncratic view the treatment could have been delayed does not absolve him from financial responsibility for this reasonable medical expense. We reverse the provision of the modification order holding Tricia solely responsible for the costs of L.D.'s orthodontia, and remand for a revised order directing the parents to split the costs according to their respective incomes. *See* Iowa Child Support Guidelines R. 9.12(5).

---

[8] Under these circumstances, we find it proper to accept the medical provider's opinion. And we find it significant the district court's modification ruling holds future determinations regarding "necessary medical treatment" rest first with the medical provider.

### C. Child Support and Unreimbursed Medical Expenses

The subject of the parties' respective incomes brings us to Tricia's third issue. In the modification ruling, the district court found Christopher had a gross annual income of $75,000 and Tricia had a gross annual income of $45,000, plus an additional $3000 in spousal support, resulting in Christopher's monthly child support obligation of $151.55. Based on these incomes, the district court ordered Christopher to pay fifty-eight percent and Tricia to pay forty-two percent of unreimbursed medical expenses.

Tricia contends the district court wrongly calculated child support and how the parties split unreimbursed medical expenses. Specifically, she believes the district court mistakenly added $3000 to her income and deducted $3000 from Christopher's income to reflect his reimbursement spousal support payments.[9] *See* Iowa Child Support Guidelines R. 9.5(1)(a)(3) ("Reimbursement spousal support shall not be added to the payee's income or deducted from the payor's income.").[10] She also argues the district court should have deducted monthly health insurance premiums from her income. According to Tricia, these faulty calculations led to an error in the court's determination of child support and of the parties' respective shares of uncovered medical expenses.

---

[9] The decree ordered Christopher to pay Tricia $250 per month in rehabilitative alimony from April 1, 2015 until March 31, 2019.

[10] The guidelines became effective January 1, 2018, and apply to cases pending on that date. Iowa Ct. R. 9.1. We interpret this language to mean the new guidelines apply to all cases pending on January 1, 2018, including those on appeal. *See In re Marriage of Roberts*, 545 N.W.2d 340, 343 n.2 (Iowa Ct. App. 1996). The district court issued its order on February 1, 2018.

In response, Christopher notes the modification order required him to maintain hospital, medical, and dental insurance for L.D. through his employer.[11] Christopher's brief does not address the district court's inclusion of reimbursement spousal support in the income calculations.

Because the district court factored in the amount of reimbursement alimony in contravention of Rule 9.5(1)(a)(3), we must remand for recalculation of child support as specified by the present-day child support guidelines. The district court should also correct the parties' respective shares of uncovered medical expenses. *See* Iowa Child Support Guidelines R. 9.12(5). Finally, the district court should clarify which party is responsible for maintaining health insurance for L.D. and consider those premiums when calculating child support.

### D. Attorney Fees

In modification proceedings, the district court may award a reasonable amount of attorney fees to the prevailing party. Iowa Code § 598.36. That provision also gives us discretion to award appellate attorney fees. *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013). In deciding whether to award attorney fees, the court must consider the parties' respective abilities to pay. *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994).

Tricia contends the district court abused its discretion in ordering her to pay $10,000 toward Christopher's trial attorney fees. She points to his significantly higher income. And she contends he was "at best only a partial 'prevailing party'"

---

[11] In her reply brief, Tricia asserts Christopher recognized at the modification hearing and in his child support worksheets that she actually carried health insurance for L.D.

because the district court did not grant his requests for sole legal custody or physical care. We are persuaded by Tricia's arguments.

The district court gave only one reason for imposing attorney fees on Tricia—she "needlessly increased [Christopher's] litigation expenses." We disagree that just one party is to blame for this ongoing legal battle. From our de novo review, it is apparent both parties have been litigious and both parties have been held in contempt for not following court orders. Moreover, the district court did not mention the disparity in the parties' incomes and respective abilities to pay. The district court failed to properly exercise its discretion in awarding attorney fees. We remand for reversal of the attorney-fee order. Both parties shall pay their own trial attorney fees.

Both parties seek appellate attorney fees. For the reasons articulated above, we believe the parties should cover their own appellate representation. We tax the costs of this appeal equally between Tricia and Christopher.

**AFFIRMED AS MODIFIED.**