*In re* MARRIAGE OF ROSEMARY DOW *et al.*—(ROSEMARY DOW, Petitioner-Appellee, *v.* JOHN D. DOW, Respondent-Appellant.)

Fourth District   No. 14864

Opinion filed September 15, 1978.

Hatch & Baker, of Champaign, for appellant.

Auler Law Offices, of Urbana, for appellee.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

Pursuant to proceedings in the circuit court of Champaign County, the marriage of petitioner Rosemary Dow and respondent John D. Dow was dissolved by decree filed September 29, 1977. This appeal by respondent concerns only the propriety of the portion of the decree splitting the custody of the minor daughters of the parties, awarding that of Sharon, then nearly 11 years old, to respondent, and that of Diana, then aged 7, to petitioner.

The evidence showed Sharon to be a hyperactive child who had been difficult for her mother to handle. Petitioner has not strongly argued that she should have been awarded custody of that child. Thus the reasonable options available to the trial judge were to split the custody as was done or to award custody of both children to respondent. On appeal respondent contends that the decision to split the custody was contrary to the manifest weight of the evidence because (1) it violated the usual

rule that siblings, particularly of the same sex, should usually be kept together and (2) it was made largely to promote the well-being of petitioner and the tranquility of the relationship between the parties rather than for the best interests of the children.

Prior to hearing and pursuant to respondent's request, the Illinois Children's Home and Aid Society, a private licensed child welfare agency, was appointed guardian *ad litem* for the minor children of the parties and directed to make a background investigation and report to the court with a recommendation as to the disposition of custody. That agency made such an investigation and presented to the court and the parties its written report recommending the disposition adopted by the court. The trial judge read the report prior to hearing. Counsel for both sides stated at the hearing that they had no objection to this procedure. The report and a supplement thereto were admitted into evidence without objection.

Petitioner's evidence on custody consisted mostly of the testimony of several of her friends, one of whom had been a nursery school teacher for Diana and a girl scout leader for Sharon. These witnesses considered petitioner to be a caring and proper parent.

The thrust of respondent's evidence was the testimony of three specialists on children. Dr. Queenie V. Mills, professor and head of the Division of Child Development and Family Relationships at the University of Illinois, stated that studies indicate that siblings provide great protective benefit to one another and that this was particularly true with females of the age difference present here. Dr. Mills stated that she knew of no studies on the effect of splitting the custody of siblings. She also testified that warm and affectionate fathers can be competent child raisers. Dr. Joan Katz, professor of early childhood education at the same university, testified that sex role identification of children is completed by age 4 or 5 and is not deterred by living with a parent of the opposite sex as long as that parent treats the child according to the general attributes linked with the sex of the child. Dr. Robert J. Lentz, a clinical psychologist at the Christie Clinic in Champaign, testified to a 30- to 40-minute interview with the girls. He described the girls as possessing a positive modeling relationship, perhaps going "both ways," and stated that they were attentive to and supportive of each other in their interview. He also testified that a parent who has difficulty in dealing with frustration inhibits the development of that parent's child in adapting to frustration by serving as a poor model. (Substantial evidence indicated that petitioner had a low frustration tolerance.) Two grade school teachers of the girls testified that the girls had a good relationship with each other and one teacher stated that Sharon exhibits concern and responsibility' for Diana.

Each of the parties also testified on their own behalf. Petitioner stated that she works but would have to be away from home for only about two hours per weekday when a child would be home. She maintained that respondent was a dedicated physicist who would have to curtail his work schedule if he were to devote sufficient time to the children. Respondent testified that he had made an alteration in his work schedule and listed the activities which he engaged in with his daughters. Much of the adjustment of his work schedule was possible because of his ability to do research at home in the evenings.

The director of the guardian *ad litem* agency and a social worker from that agency, who together had drafted their report, testified briefly as to how they had prepared it. The essence of the recommendations of the report was that petitioner was emotionally unsuited to handle Sharon but fully capable of doing so with Diana and that to deprive petitioner of both children would be likely to further disrupt the relationship between the various members of the already disrupted family to the detriment of the children. The report disagreed with the testimony of Dr. Katz, contending that prepuberty girls of the age of Diana would learn feelings about sexuality largely through their identification with their mother. This was given as an additional reason for placing Diana with petitioner. The report concluded that the girls were not apprehensive about separation and that Diana would be willing to live with her mother.

The courts of review of this State have not spoken often concerning the propriety of custody awards which separate young children of divorced parties. In *Umlauf v. Umlauf* (1889), 128 Ill. 378, 21 N.E. 600, the supreme court reversed a decree which had refused to modify a custody award of both young sons to the mother. The evidence showed the 9-year-old to desire to live with his father. The 6-year-old son appeared to be a delicate lad who preferred his mother. In ordering the trial court to change the custody of the older boy to the father, the supreme court gave importance to a no-longer-recognized premise that a father had some preference in custody awards. The implication of the ruling is that the separation of children in awarding custody is not of itself impermissible. In *Mikrut v. Mikrut* (1969), 113 Ill. App. 2d 446, 453, 251 N.E. 84, 87, the original custody award had placed all four children of the parties with the mother. Later that order was modified to award two of the children to the father. In reversing the order of modification, the appellate court ruled no substantial change of circumstances to have occurred and also noted that although under *Umlauf* separate custody awards were not prohibited, they were "unusual as family ties between children of the same parents are not to be disturbed lightly. (98 A.L.R.2d Annotated, p. 926.)"

■■ The parties agree that the essential question before the trial court was to decide upon the custody disposition that would have been in the best

interests of the children (*Nye v. Nye* (1952), 411 Ill. 408, 105 N.E.2d 300). The Illinois authority and most of that from other jurisdictions (Annot., 98 A.L.R.2d 926 (1964)) is that a custody order that separates children is not usually in their best interests but can occasionally be. Here, some support for the decision to do so is given by the conclusion in the Society report, contrary to the opinion of Dr. Katz, that the ability of a girl of Diana's age to develop proper feelings of sexuality would be aided by living with her mother. Evidence, presented late in the hearing, revealed that the children would be living within five or six blocks of each other, attending the same grade school and able to play together. This indicates that any damage resulting from the separation would be mitigated. However, the heart of the trial judge's decision was his acceptance of the conclusion of the report that placement of both children with the father would so further disrupt the relationship between the mother and father and that the resultant continued turmoil would damage the children.

The court heard evidence which described the prior disputes between petitioner and respondent and the emotional makeup of each of them. It could properly form an opinion that the disruption predicted was likely. Both the report and the court's comments at the time it pronounced its decision discussed the anticipated family disruption upon the basis of the effect it would have on the children. The decision of the trial court should be upheld unless it is against the manifest weight of the evidence. (*Davis v. Davis* (1976), 41 Ill. App. 3d 942, 354 N.E.2d 657.) Respondent's evidence showed many disadvantages to separating the children. The trial court concluded that these disadvantages would be mitigated by the children living close to each other and were outweighed by the likely traumatic effect upon them that would result should both children be taken from petitioner. We do not find that conclusion to be contrary to the manifest weight of the evidence.

Accordingly, we affirm.

Affirmed.

MILLS and TRAPP, JJ., concur.