**In re the PATERNITY OF B.D.D. and B.D.D.**

**No. 20A03–0206–JV–192.**

Court of Appeals of Indiana.

Nov. 21, 2002.

Theora Ohaneson, Graber Law Firm, P.C., Middlebury, IN, Attorney for Appellant.

## OPINION

MATHIAS, Judge.

John Paul D'Antonio ("Father") appeals the Elkhart Superior Court's order regarding modification of custody of his seven-year old daughter, Sister B.[1] Father raises two issues on appeal, which we consolidate and restate as: whether the trial court abused its discretion when it ordered that the original split custody order should remain and no modification was warranted.

We reverse.

### Facts and Procedural History

Father and Bonita Ortiz Washington ("Mother") began a relationship in 1990 and have two daughters as a result of that relationship, Sister A, born on May 8, 1991, and Sister B, born on January 30, 1995. The parties separated in 1999, and on July 12, 2001, Mother filed a petition to establish paternity. On September 21, 2001, paternity was established by agreement and Mother was awarded custody of Sister B and Father was awarded custody of Sister A.

In October 2001, Father learned that Mother planned to move to Texas and take Sister B with her. Father filed a Petition for Emergency Hearing and a Petition for Temporary Restraining Order in order to stop Mother from taking Sister B with her. On October 9, 2001, a hearing was held on Father's petition for emergency custody, and Father was granted emergency temporary custody of Sister B until a custody hearing could be held. A hearing was held on May 6 and 8, 2002 on the issue of change of custody.

Mother presented evidence that she lived in a three-bedroom apartment in Lubbock, Texas, and she had resided at that apartment for approximately five months. Tr. pp. 43–46. Mother gave evidence that she had a job in which she

---

1. Since both of the children have the initials B.D.D., we will identify the older daughter as Sister A and the younger daughter as Sister B.

worked around forty-five hours per week. Tr. p. 49. There was also testimony given that many of Mother's relatives lived in the Lubbock area, that they were a close family, and that they would be willing to help her out. Tr. pp. 5, 12, 14, 25, 41, 55. Mother is married to Corrie Washington, but she stated that he no longer lived with her because he had been abusive to her. Tr. p. 52. Mother had applied for a divorce through the Legal Aid Office in Texas, but she had not followed up on the divorce as of the date of the trial. Tr. p. 35.

Father presented evidence that he lived in a four-bedroom home that he was leasing in the Elkhart area, and he had resided there for about four months. Tr. p. 93. He was engaged to Cari Peasley, who lived with him. Tr. pp. 93, 111. He also lived with her child and their child. Tr. p. 194. Father had worked for a local company for seven years as a job foreman and worked about forty to forty-five hours per week. Tr. pp. 94, 113.

Before Mother moved to Texas, the sisters lived within a mile of one another, and they had a very close relationship. Tr. pp. 33, 150. They have lived in the area their entire lives and attended their schooling in the area. Tr. p. 114. Both of the sisters participated in extracurricular activities, such as cheerleading and baseball. Tr. pp. 115, 118, 179.

The guardian ad litem report recommended that Father should have custody of both sisters. Appellant's App. p. 276. It stated that Father provided "a stable, loving home for the children." *Id.* It further stated that the guardian ad litem had "concern regarding the mother's relationship with her current husband" and "that the mother may not be able to maintain consistency long-term." *Id.*

On May 13, 2002, after taking the matter under advisement, the trial court issued the following order concerning the permanent custody of Sister A and Sister B:

This matter was submitted to the court on May 6 and May 8, 2002. The parties appeared with counsel, evidence and arguments heard and the matter taken under advisement. Having reviewed the evidence, the court finds:

1. Paternity was established September 21, 2001, by agreement and by further agreement the father was awarded custody of [Sister A] and mother awarded custody of [Sister B] as of the date of that hearing.

2. On October 9, 2001, the court awarded father temporary custody of [Sister B] based on the threatened removal of [Sister B] to the State of Texas by the mother.

3. The mother filed a petition for emergency custody on November 16, 2001 for the purpose of removing both children to Texas on the mistaken belief that she had permanent custody of both children.

4. The mother simultaneously petitioned for a change of custody and authority to move to Texas, thereby making the custody of the children the primary issue for this hearing.

5. It is the duty of the court to determine the best interests of the children and whether there has been a substantial change in circumstances. Pursuant to IC 31–14–13–2 the court, in determining the best interests of the children, must consider:
   (a) age and sex of the children
   (b) wishes of the parents
   (c) wishes of the children
   (d) interaction and interrelationship of the child with:
      (1) parents
      (2) siblings

(3) any other person

(e) child's adjustment to:

(1) home

(2) school

(3) community

(f) the mental and physical health of all individuals involved

(g) evidence of a pattern of domestic violence by either parent

6. The court, based on the evidence, finds that the children are both girls, ages 11 and 7; the parents do not agree on the custody and the wishes of the children were not placed in the record. *There was no credible evidence that the children react uncomfortably with either parent or their significant others, their siblings or any other person who has significant contact with the children as of the date of the hearing. The children have adjusted to each of their homes, their school and community.*

7. *There does not appear to be any compelling reason to change the original order of custody of the children, and the order of temporary custody is set aside, and the court now grants permission to the wife to remove [Sister B] to Lubbock, Texas.*

. . .

Appellant's App. pp. 9–10 (emphasis added). Father filed a motion to correct error on May 16, 2002, which was denied. Father now appeals. Additional facts will be given as necessary.

### Discussion and Decision

■ Initially, we note that Mother did not file an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing arguments for the appellee. *In re the Paternity of C.R.R.*, 752 N.E.2d 58, 60 (Ind.Ct. App.2001). We apply a less stringent standard of review with respect to showings of reversible error, and we may reverse the trial court's decision if the appellant can establish prima facie error. *Id.* (citing *Fisher v. Bd. of Sch. Trs.*, 514 N.E.2d 626, 628 (Ind.Ct.App.1986)). "Prima facie error, in this context, is defined as 'at first sight, on first appearance, or on the face of it.'" *Id.* (quoting *Johnson County Rural Elec. Membership Corp. v. Burnell*, 484 N.E.2d 989, 991 (Ind.Ct.App. 1985)). If an appellant is unable to meet that burden, we will affirm. *Id.*

■ A modification of custody shall be made only upon a showing that the "modification is in the best interests of the child, and there is a substantial change in one or more of the factors the court may consider under [IC 31–14–13–2]." Ind. Code § 31–14–13–6 (1998 & Supp.2002). A determination of child custody modification is committed to the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. *Klotz v. Klotz*, 747 N.E.2d 1187, 1189 (Ind. Ct.App.2001). We have a "preference for granting latitude and deference to the trial court in family law matters." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind.2002). An abuse of discretion occurs where the decision is against the logic and effect of the facts and circumstances before the court or the reasonable inferences drawn therefrom. *Id.*

■ Father is appealing a decision in which the trial court entered findings of fact and conclusions of law, so we apply a two-tiered standard to review the trial court's decision. "First, we determine whether the evidence supports the findings and second, whether the findings support the judgment." *Carmichael v. Siegel*, 754 N.E.2d 619, 625 (Ind.Ct.App.2001). We will only disturb the judgment where there is no evidence supporting the findings or the findings do not support the judgment.

*Id.* On review, we neither reweigh the evidence nor judge the credibility of the witnesses. *Hanks v. Arnold,* 674 N.E.2d 1005, 1007 (Ind.Ct.App.1996).

Father argues that the trial court abused its discretion when it refused to modify custody to award custody of Sister B to him and instead kept the original custody order in place. He believes that the trial court's decision is contrary to the evidence presented at trial and contrary to the best interests of both children.

The original custody order established split custody, with custody of Sister A to Father and custody of Sister B to Mother. Before Mother moved to Texas, Father and Mother lived very close to each other, and this enabled both parents and the sisters to have a close relationship. Mother's move to Texas created a situation where Sister B would be separated from both Sister A and Father.

At the custody hearing, it was Father's burden to prove that Mother's move to Texas constitutes such a substantial change in one of the factors from Indiana Code section 31–14–13–2 as to justify a modification of the original custody order. "Although a move out of state is not *per se* a [substantial change] such as to make that parent's continued custody unreasonable, that does not mean that the circumstances inherent in such a move are always insufficient as a matter of law to warrant modifying custody." *In re Paternity of Winkler,* 725 N.E.2d 124, 128 (Ind. Ct.App.2000) (quoting *Lamb v. Wenning,*

600 N.E.2d 96, 98–99 (Ind.1992)). A change in conditions must be judged in the context of the whole environment, and the effect on the child is what renders a change substantial or inconsequential. *Id.*

In this case, the trial court made sparse findings to determine whether custody should be modified. These findings were the following:

> The court, based on the evidence, finds that the children are both girls, ages 11 and 7; the parents do not agree on the custody and the wishes of the children were not placed in the record. There was no credible evidence that the children react uncomfortably with either parent or their significant others, their siblings or any other person who has significant contact with the children as of the date of the hearing. The children have adjusted to each of their homes, their school and community.

Appellant's App. p. 10.

Orders splitting custody have been upheld and are not a *per se* abuse of discretion in Indiana, but the best interests of the child should be considered paramount in a decision to split custody. *In re Marriage of Larkin,* 462 N.E.2d 1338, 1342 (Ind.Ct.App.1984). Split custody of parties' minor children is the exception to the rule in Indiana and many other states for obvious reasons.[2] While split custody may be a reasonable alternative when the children involved live in the same community, and even more so when the children

---

2. In contrast to Indiana, many states have found that splitting custody of minor children is undesirable, but will affirm split custody if supported by compelling reasons. *See In re Marriage of Dow,* 64 Ill.App.3d 177, 20 Ill. Dec. 965, 380 N.E.2d 1174, 1176 (1978); *In re Marriage of Will,* 489 N.W.2d 394, 398 (Iowa 1992); *Richardson v. Richardson,* 802 So.2d 726, 734 (La.Ct.App.2001); *Sefkow v. Sefkow,* 427 N.W.2d 203, 215 (Minn.1988);

*Brocato v. Brocato,* 731 So.2d 1138, 1142 (Miss.1999); *Replogle v. Replogle,* 903 S.W.2d 551, 554 (Mo.Ct.App.1995); *Jelenic v. Jelenic,* 262 A.D.2d 676, 677, 690 N.Y.S.2d 782 (1999); *BeauLac v. BeauLac,* 649 N.W.2d 210, 216 (N.D.2002); *Leppert v. Leppert,* 519 N.W.2d 287, 291 (N.D.1994); *In re Marriage of Moe,* 66 Or.App. 947, 676 P.2d 336, 338 (1984); *Schmidt v. Schmidt,* 444 N.W.2d 367, 370 (S.D.1989).

attend the same school, as was originally true in the present case, it is difficult to believe that split custody remains an equally reasonable alternative that is in the best interests of the children when they are to live apart in separate communities and, as here, in separate states.

The sisters have lived their entire lives in the Elkhart area. They have attended all of their schooling at the same area schools together, and both girls have enjoyed the Elkhart schools they attended. Sister A and Sister B have had a very close relationship their entire lives. Even when split custody was originally ordered pursuant to the paternity agreement, the sisters still lived within one mile of each other, attended the same school, and had frequent contact with each other.

Ample evidence from family and friends supporting both parties was presented at the hearing. There was also testimony from a friend of Mother's that it would be in the best interests of the sisters to remain with Father. Tr. p. 158. Despite the abundance of lay testimony, however, neither side submitted any expert testimony. In the present case, the only objective, expert testimony submitted was that of the guardian ad litem, whose recommendation was that both sisters be placed in Father's custody, modifying custody of Sister B.[3]

Under the facts and circumstances of this case, the trial court's findings were not supported by the evidence, or were at best, substantially incomplete in the context of events. The court found that the sisters had "adjusted to each of their homes, school and community." Appellant's App. p. 10 (emphasis added). In fact, prior to the custody hearing, the sisters had been living *together* with Father for seven months as a result of the trial court's emergency temporary custody order. Mother presented testimony as to the alleged stability of her living conditions, although that stability is called into question by her testimony that she and her abusive current husband have separated. There was no testimony that Sister B had adjusted to Mother's home in Texas or to a Texas school or community. The trial court's finding would support a judgment of keeping the original custody order in place if Mother were remaining in the Elkhart area, but an accurate finding supports the opposite conclusion when Mother is moving out of state.

The evidence before the trial court sustained Father's burden of proving a substantial change (Mother's move out of state and recent separation from an abusive husband) and that modification to place custody of Sister B with Father was in the best interests of both children (guardian ad litem and lay testimony). The trial court therefore abused its discretion in continuing the original split custody order despite a documented substantial change such that the original custody order is unreasonable and a modification is in the best interests of the children.

Reversed.

BAILEY and SULLIVAN, JJ., concur.

---

**3.** The guardian ad litem is appointed by the court to "represent and protect the best interests of a child." Ind.Code § 31–9–2–50 (1998).