## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 04 2015, 9:39 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Gregory F. Zoeller
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Paternity of A.D. | August 4, 2015 |
| | Court of Appeals Cause No. 71A03-1502-JP-58 |
| State of Indiana Ex. Rel. | Appeal from the St. Joseph Probate Court |
| E.M.W., *Appellant,* | The Honorable James N. Fox, Judge |
| v. | The Honorable Aric J. Rutkowski, Magistrate |
| J.M.D., *Appellee,* | Trial Court Cause No. 71J01-0105-JP-394 |

**Bradford, Judge.**

# Case Summary

[1] A.D. was born out-of-wedlock to Appellant Eva M. Williams ("Mother") and Appellee James M. Dawning ("Father") on March 28, 2000. Because Mother was under age at the time of A.D.'s birth, A.D.'s maternal grandmother, Zola Harris, was appointed to be A.D.'s guardian. Approximately one year after A.D.'s birth, Appellant the State of Indiana (the "State") filed a petition to establish paternity. The trial court issued an order conclusively establishing Father's paternity of A.D. and ordering Father to pay child support.

[2] On July 8, 2014, the trial court found Father in contempt for being in arrears on his child support obligation. Father subsequently filed a motion requesting that the court re-calculate Father's child support arrearage and to vacate the contempt finding. Following a number of hearings, the trial court issued an order vacating the prior order establishing Father's paternity of A.D. The State filed a motion to correct error, which was subsequently denied by the trial court.

[3] On appeal, the State contends that the trial court abused its discretion in denying its motion to correct error. Concluding that the trial court abused its discretion in denying the State's motion, we reverse the trial court's orders denying the State's motion to correct error and vacating the trial court's prior order establishing paternity and remand to the trial court with instructions.

# Facts and Procedural History

[4] A.D. was born on March 28, 2000. At the time of A.D.'s birth, Mother was seventeen years old and still living with her Mother. Father signed a paternity affidavit at the time of A.D.'s birth. Harris was named A.D.'s guardian shortly after A.D.'s birth because Mother was underage at the time of A.D.'s birth. Nothing in the record indicates that the guardianship order awarded Harris sole physical custody of A.D. or ordered that Harris should be the recipient of funds paid pursuant to any potential future child support obligation relating to A.D.[1] Mother and A.D. continued to reside with Harris while Mother was "under-age." 7/8/2014 p. 10.

[5] A little more than one year after A.D.'s birth, the State filed a petition to establish Father's paternity of A.D. About the time the paternity proceedings were filed, Mother and A.D. moved out of Harris's home. During a July 3, 2001 hearing on the State's petition to establish paternity, Father admitted that he was A.D.'s biological Father. At the conclusion of the July 3, 2001 hearing, the trial court issued an order conclusively establishing Father's paternity of A.D. In addition to conclusively establishing paternity, the trial court's July 3, 2001 order also provided (1) that Mother was awarded custody of A.D., (2) that

---

[1] Harris filed a motion for child support on November 22, 2000, but soon thereafter withdrew her motion. She has not made any subsequent requests for child support.

Father was entitled to parenting time with A.D., and (3) that Father was ordered to pay child support in the amount of $42.00 per week.

[6] On July 8, 2014, the trial court found that Father was $25,945.50 in arrears of his child support obligation. The trial court also found Father in contempt for failing to pay child support. The trial court, however, deferred sentencing on its contempt finding.

[7] On August 6, 2014, Father filed a motion requesting that the trial court re-calculate his arrearage and vacate the contempt finding. In filing this motion, Father claimed that he should not have been found in contempt for failing to pay his child support to Mother because A.D. actually lived with Harris. The trial court conducted hearings on September 19 and September 29, 2014, in order to obtain more information about the guardianship and where A.D. lived.

[8] During these hearings, the trial court heard evidence indicating that despite the fact that A.D. resided with Mother after A.D. and Mother moved out of Harris's home in or around 2001, neither Mother nor Harris ever petitioned to terminate the guardianship order. The trial court also heard evidence that A.D. began splitting his time between Harris's residence and Mother's residence when he was approximately eight years old. Harris's residence and Mother's residence were located within close proximity and A.D. was free to go between the two residences as a matter of convenience. This arrangement continued as of the date of the September 29, 2014 hearing, with Harris, Mother, and A.D. all indicating that they believe that A.D. resides at both Mother's and Harris's

homes. During the September 29, 2014 hearing, Harris indicated that the ongoing nature of the guardianship was not due to the fact that she felt the guardianship was still needed. Specifically, Harris indicated that the guardianship was never terminated or changed because it simply "never came up to being a problem." 9/29/2014 Tr. p. 13. Harris also reiterated during the September 29, 2014 hearing that neither Mother nor Father had ever paid her child support relating to A.D.

On December 9, 2014, the trial court issued an order vacating the July 3, 2001 order establishing Father's paternity of A.D. Approximately eight days later, the State filed a motion to correct error. The trial court issued an order denying the State's motion to correct error on January 28, 2015. This appeal follows.

# Discussion and Decision

On appeal, the State contends that the trial court abused its discretion in denying its motion to correct error.

# I. Standard of Review

A trial court has broad discretion when granting or denying a motion to correct error. *Dughaish ex rel. Dughaish v. Cobb*, 729 N.E.2d 159, 167 (Ind. Ct. App. 2000), *trans. denied* 753 N.E.2d 2 (Ind. 2001). We will reverse its decision only for an abuse of that discretion. *Id.* An abuse of discretion occurs if the trial court's decision was against the logic and effect of the facts and circumstances, or reasonable inferences therefrom, that were before the court, or if the trial court's decision "is without reason or is based upon impermissible reasons or considerations." *Id.*

> However, when an appellee fails to submit a brief, our standard of review is relaxed because we will not assume the responsibility of developing arguments for the appellee. *In re Paternity of B.D.D.*, 779 N.E.2d 9, 13 (Ind. Ct. App. 2002). We do not apply the typical standard of review. *Id*. Instead, we review the trial court's decision for "*prima facie* error." *Id*. *Prima facie*, in this context, means at first glance or on the face of it. *Id*.

*White v. White*, 796 N.E.2d 377, 379 (Ind. Ct. App. 2003) (emphases in original). Thus, because the appellee has failed to submit a brief on appeal, we consequently review the trial court's denial of the State's motion to correct error for *prima facie* error.

# II. Analysis

## A. Questions Relating to Validity of the July 3, 2001 Paternity Determination

[12] Indiana Code section 31-14-1-1 explicitly provides that the General Assembly "favors the public policy of establishing paternity" of a child born out of wedlock. A paternity affidavit executed under Indiana Code section 16-37-2-2.1 establishes paternity and gives rise to parental rights and responsibilities.

Ind. Code § 16-37-2-2.1(j).[2] In the instant matter, the parties' testimony indicates that Father executed a paternity affidavit in accordance with Indiana Code section 16-37-2-2.1. Mother and Father both testified during the hearing conducted on July 3, 2001, that Father signed a paternity affidavit at the time of A.D.'s birth. Nothing in the record indicates that this paternity affidavit has been rescinded or set aside.

[13] Indiana Code section 31-14-7-3 (2001), which went into effect after Father signed the paternity affidavit but before the trial court issued its order establishing Father's paternity, provides that a man is a child's legal father if the man executed a paternity affidavit in accordance with Indiana Code section 16-37-2-2.1 and the paternity affidavit has not been rescinded or set aside under said section. Further, we have previously held that the provisions of Title 31, Article 14 provide the means to establish paternity, not to disestablish it. *See In re Paternity of H.J.B.*, 829 N.E.2d 157, 160 (Ind. Ct. App. 2005). In reaching this holding, we noted that if we were to hold otherwise, "our courts could create a

---

[2] We observe that Indiana Code section 16-37-2-2.1 has been amended since the time of A.D.'s birth. At the time of A.D.'s birth, the above-cited language could be found at Indiana Code section 16-37-2-2.1(g) rather than Indiana Code section 16-37-2-2.1(j).

'filius nullius,'[3] which is exactly what paternity statutes were created to avoid." *See id.* (internal citation omitted). We further noted that being declared a "filius nullius" would undoubtedly carry with it countless detrimental financial and emotional effects. *Id*. (citation omitted).

[14] A little over one year after A.D. was born, the State filed a petition to establish paternity. Indiana Code section 31-14-5-6 provides that "[t]he child, the child's mother, and each person alleged to be the father are necessary parties" to a paternity action. In accordance with Indiana Code section 31-14-5-6, A.D., Mother, and Father were listed as parties to the paternity action. Again, during the July 3, 2001 hearing on the State's petition, both Mother and Father testified that Father had signed a paternity affidavit at the time of A.D.'s birth. Mother and Father also admitted before the court that Father was A.D.'s biological father. Following the conclusion of the July 3, 2001 hearing, the trial court issued an order conclusively establishing that Father was the biological father of A.D.

[15] Given the fact that both Mother and Father repeatedly asserted that Father was A.D.'s biological father coupled with the General Assembly's stated public

---

[3] The term "filius nullius" is defined as the "son of nobody." *See generally, In re Paternity of Infant T.*, 991 N.E.2d 596, 600 (Ind. Ct. App. 2013).

policy interest in establishing paternity, we conclude that the trial court's July 3 2001 order, which conclusively established Father's paternity, was valid. It would be both emotionally harmful to A.D. and contrary to the public policy interests of this State to allow the trial court to come back approximately thirteen years later and vacate this conclusive paternity determination. We therefore conclude that the State has made a *prima facie* case demonstrating that the trial court abused its discretion in vacating the approximately thirteen-year-old paternity determination and in denying the State's resulting motion to correct error.

## B. Trial Court's Reliance on Our Prior Decision in *White v. White* Is Misplaced

[16] Furthermore, we conclude that the trial court's reliance on our prior opinion in *White* is misplaced. Again, on December 9, 2014, the trial court issued an order vacating its prior July 3, 2001 paternity order. In vacating the prior court order establishing paternity and subsequently denying the State's motion to correct error, the trial court relied on this court's prior opinion in *White* for the proposition that Harris was entitled to receive notice of the underlying paternity proceedings.

[17] In *White*, we were faced with the question of whether a court-appointed guardian who had custody of the child at issue and was the court-appointed recipient of child support payments made in relation to the child was entitled to notice of a motion for a change of custody and for the termination of a parent's child support obligation. 796 N.E.2d at 378-81. Under the facts presented in

that case, we concluded that the child's court-appointed guardian was entitled to receive notice of the motion for a change of custody and for the termination of father's child support obligation. *White*, 796 N.E.2d at 383. However, we believe that the situation at hand can easily be distinguished from our opinion in *White*.

[18] Review of the record demonstrates that unlike the situation presented in *White*, while Harris was appointed by the trial court to be A.D.'s guardian, nothing in the record indicates that the trial court ever awarded Harris physical custody of A.D. or ordered that Harris should be the recipient of funds paid pursuant to any potential future child support obligation. Thus, the instant matter does not present a situation where a child's custodian or the recipient of child support was not notified of a request for a custody change or the termination of one's obligation to pay child support. Rather, the instant appeal presents the question of whether a non-custodial guardian is entitled to notice of a paternity determination. In light of the statutory authority setting forth who is a necessary party to a paternity action, we believe the answer is no. As such, we find that the trial court improperly relied on our prior opinion in *White*.

[19] In addition, we fail to understand how lack of notification to Harris should in anyway relieve Father of his legal obligation to support A.D.

## C. Additional Considerations

[20] Indiana code section 31-16-16-6 provides that a trial court "may not retroactively modify an obligor's duty to pay a delinquent [child] support

payment." Stated differently, once the funds have accrued to a child's benefit under a court order, the trial court may not annul them in a subsequent proceeding. S*ee generally Nill v. Martin*, 686 N.E.2d 116, 118 (Ind. 1997) (providing that a corollary to the rule that a custodial parent may not contract away a child support obligation is the rule that "once funds have accrued to a child's benefit under a court order, the court may not annul them in a subsequent proceeding"). If we were to affirm the trial court's denial of the State's motion to correct error, we would effectively be allowing the trial court to retroactively annul child support funds that had accrued for A.D.'s benefit. In light of the plain language of Indiana Code section 31-16-16-6 and the Indiana Supreme Court's opinion in *Nill*, it clearly would be error for us to do so.

## Conclusion

In sum, we conclude that the trial court abused its discretion in vacating the July 3, 2001 order establishing paternity and in denying the State's resulting motion to correct error. Instructing the trial court to keep in mind the plain language of Indiana Code section 31-16-16-6 and the Indiana Supreme Court's opinion in *Nill*, we remand the instant matter to the trial court for an order on Father's motion to re-calculate his arrearage and to vacate the contempt finding.

The judgment of the trial court is reversed and the matter remanded with instructions for further proceedings.

May, J., and Crone, J., concur.