FILED

Jul 14 2020, 8:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Bryan L. Ciyou
Alexander N. Moseley
Ciyou and Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Leanna Weissmann
Lawrenceburg, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Annette McDaniel, *Appellant-Petitioner,* <br><br> v. <br><br> Joe McDaniel, *Appellee-Respondent* | July 14, 2020 <br><br> Court of Appeals Case No. 19A-DR-2983 <br><br> Appeal from the Dearborn Superior Court <br><br> The Honorable Sally A. McLaughlin, Judge <br><br> Trial Court Cause No. 15D02-1212-DR-246 |

**Crone, Judge.**

# Case Summary

Annette McDaniel (Mother) appeals the trial court's order modifying the physical and legal custody of her minor child, C.M., whom she shares with her former husband, Joe McDaniel (Father). She asserts that the trial court abused its discretion in denying her request to relocate sought prior to the modification, and that the modification order is clearly erroneous and an abuse of discretion. We decline to address the relocation issue on grounds of mootness. Finding neither clear error nor an abuse of discretion in the trial court's modification order, we affirm.

# Facts and Procedural History

Mother and Father dissolved their marriage in April 2013. One child, C.M., was born of the marriage in May 2008. At the time of dissolution, Mother was granted primary physical custody of C.M., and the parties shared joint legal custody. In April 2018, Mother filed a notice of intent to relocate. On May 7, 2018, Father filed his objection to relocation and a request for evidentiary hearing. The trial court held an evidentiary hearing on June 14, 2018. During the hearing, Mother stated that she had already sold her Dearborn County residence and moved to Richmond. Father's counsel emphasized that Father lives in northern Kentucky, and that the move would increase Father's travel time to see C.M. by more than one and one-half hours. Although Father had not filed a written petition to modify custody or sought an injunction against Mother, Father's counsel orally presented these options to the trial court. The

trial court took the relocation matter under advisement pending a report from a court-appointed guardian ad litem (GAL).

[3]     In the interim, Mother filed multiple pro se motions for contempt against Father. Following a hearing on those motions, the trial court found the motions unsubstantiated and declined to find Father in contempt. The court did note that the parties had difficulties with communication. The trial court advised the parties that the GAL report was complete and scheduled a hearing on the relocation issue.

[4]     Following several continuances, the trial court held a hearing regarding Mother's relocation request in November 2018, and issued an order denying that request on December 21, 2018. Among other things, the court concluded that Mother in fact moved with C.M. shortly after filing the notice of intent to relocate, and that the move was planned prior to filing the notice. The court found that Mother's move significantly impacted Father's travel time and his ability to be involved with C.M.'s activities. The court found that Mother's move changed C.M.'s school without giving Father any input into the decision despite the court's order of joint legal custody. The court also noted that Mother had filed unsubstantiated motions for contempt against Father and that she had failed to accommodate Father's parenting time and relationship with C.M. In sum, the court concluded that the request to relocate and the actual relocation were not in C.M.'s best interests, and therefore the court denied Mother's request to relocate. Acknowledging that Mother had already sold her house and moved out of C.M.'s previous school district, the trial court

encouraged the parties to reach an agreement on this issue and, if not, the court would set the matter for a hearing upon motion.

[5] Mother filed a motion to correct error on January 16, 2019. The trial court scheduled a hearing for February, which was later continued to May 2019. Prior to that hearing being held, Father filed a petition for modification of child custody, visitation, and support. Accordingly, the trial court set a combined hearing for Mother's motion to correct error and Father's petition to modify for September 9, 2019. Following that hearing, the trial court issued its findings of fact, conclusions thereon, and order denying Mother's motion to correct error on the relocation issue and granting Father's petition to modify custody. Regarding custody modification specifically, the trial court found in relevant part that, since the "prior determination of custody and order for joint legal custody with primary physical custody to Mother there has been a significant change in circumstances" including,

    a) Mother re-locating to a location that adds an additional one and one-half hours of travel time for Father which creates an extreme difficulty in Father and Father's family being involved in extracurricular activities. The Court recognizes the relocation of a parent alone, will not support a modification of custody; rather, it is the effect of the move upon the child that renders it substantial or inconsequential – i.e., against or in line with the child's best interests. Prior to Mother's relocation, child lived in Dearborn County which was a little over half hour in distance from Father's home in [n]orthern Kentucky and in close proximity to Father's family members who had close relationship with [C.M]. Other than Mother, [C.M.] has no family members in Richmond area,

b) actions of Mother in unilateral decision to purchase new property which required [C.M.] to change school systems, and relocate a greater distance away than Mother had ever previously discussed with Father despite joint custody, Mother had commuted to new employment for over a year and one-half and move closer is rational, but no discussion as to impact of move with Father is not,

c) a pattern of inflexibility and failure by Mother to communicate with Father prior to enrolling [C.M.] in new school system and extracurricular activities and a failure to accommodate Father's parenting time after relocation when [C.M.] is unable to be at scheduled parenting time with Father when Father's parenting time conflicts with son's activities,

d) Mother's recent marriage to an individual with multiple legal cases not disclosed to the guardian ad litem; including approximately thirteen criminal/traffic cases, seventeen civil cases including a protective order issued in which new husband was later charged with invasion of privacy. GAL testified at hearing that these were issues of concern and not disclosed in interview prior to first GAL report,

e) Mother's recent actions in calling police to investigate potential child abuse by Father while [C.M.] was in Father's home that were unsubstantiated, such that police encouraged Father to file a false report [claim] against Mother,

f) Mother's previous filing of contempt actions that were not substantiated after hearing,

g) the parties are no longer able to communicate effectively regarding [C.M.].

Appealed Order at 5-6 (citations omitted) (capitalization added). Accordingly, the trial court found that there had been "a substantial change in circumstances that affects the best interests of the child[.]" *Id*. at 6.

[6]     In specifically considering the statutory factors regarding child custody provided in Indiana Code Section 31-17-2-8, the trial court found,

> a)  [C.M.] is an eleven-year-old male and had voiced a desire to continue to live with Mother to the GAL in the GAL's first report. The GAL at hearing, after second GAL report, did not give recommendation regarding custody and advised that the child would flourish with either parent.
>
> b) the lack of family with whom [C.M.] has close ties in the new location and the move substantially hinders Father's participation in extracurricular activities,
>
> c) the legal history of Mother's new husband,
>
> d) [C.M.'s] positive adjustment to the new school in Richmond, Indiana is noted as well [as C.M.'s] positive adjustment to a summer sports program while at Father's summer parenting time indicating [C.M.] is adaptable to new environments,
>
> e) both parents love the child, are fit and proper parents, and each want primary physical custody,
>
> f) the actions of Mother since the re-location that have not accommodated Father's parenting time and as outlined [above],
>
> g) the Court takes judicial notice of previous hearings and the Court file and notes a pattern of Mother's attitude being dismissive and somewhat hostile towards Father's

communication and involvement with [C.M.] and general attitude of cooperation displayed by Father,

h) the Court considers [that C.M.] has primarily resided with Mother, however [C.M.] has spent extended time with Father during summers and Father has stable housing in a good school district and [C.M.] has participated in summer programs there,

i) the parents have current joint legal custody. However, the decisions are for the most part being made by Mother and Father is required to adapt. Both parents are exceptional parents, the issue in determining whether joint legal custody is appropriate is not the parties['] respective parenting skills, but their ability to work together for the best interests of [the child] … the trial court is placed in a position of choosing one parent over the other regarding legal custody, because of their inability to communicate and work together.

j) [C.M.] has no close ties with any extended family in new location of Richmond, Indiana and relocation takes [C.M.] one and one half to two hours away from all extended family of Father who had close relationship with [C.M.] when [C.M.] lived in Dearborn County.

*Id*. at 7-9.

Based upon the foregoing, and the court's review of the "totality of the circumstances," the trial court concluded that C.M.'s interests would be best served by a modification of custody to Father having primary physical and full legal custody. *Id*. at 9. Therefore, the trial court ordered that Father shall have physical custody of C.M., with C.M. attending school in Father's jurisdiction as of January 1, 2020. Mother was granted parenting time pursuant to the Indiana

Parenting Time Guidelines, with sufficient parenting time to accommodate the distance between parental residences. The court further ordered Father to encourage and accommodate Mother's parenting time, with additional time to Mother during the transition time. This appeal ensued.[1]

## Discussion and Decision

## Section 1 – The trial court's modification order is neither clearly erroneous nor an abuse of discretion.

Mother contends that the trial court erred when it modified the original custody order and granted Father primary physical and sole legal custody of C.M. We review custody modifications only for an abuse of discretion. *Werner v. Werner*, 946 N.E.2d 1233, 1244 (Ind. Ct. App. 2011), *trans. denied*. There is a well-established preference in Indiana for granting significant latitude and deference to our trial judges in family law matters. *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016). Appellate courts "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses,

---

[1] After the parties filed their respective appellate briefs, Mother filed a motion to strike content from Father's brief, and Father filed a response and request for the attorney's fees expended by Father in responding to the motion to strike. We deny both motions contemporaneously with this decision by separate order. As for Mother's motion to strike the alleged "impertinent, scandalous, and other inappropriate matter" contained in Father's brief, *see* Appellee's Motion to Strike at 1, we note that the lion's share of the content referenced by Mother in her motion to strike can be attributed to the trial court's findings. While we acknowledge that Father did not always quote the trial court's findings verbatim, we find nothing in Father's brief that is impertinent, scandalous, or otherwise inappropriate. As for Father's request for attorney's fees, we observe that our discretion to award attorney fees under Indiana Appellate Rule 66(E) is limited to instances when "an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Staff Source, LLC v. Wallace*, 143 N.E.3d 996, 1012 (Ind. Ct. App. 2020) (citation omitted). Mother's motion to strike does indeed have characteristics of vexatiousness; nevertheless, in our discretion, we decline to find an award of fees appropriate in this instance.

observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002). Therefore, on appeal we will not "reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). We will reverse the trial court's custody determination only if the decision is "clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom." *In re Paternity of C.S.*, 964 N.E.2d 879, 883 (Ind. Ct. App. 2012), *trans. denied*. "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." *Kirk*, 770 N.E.2d at 307.

[9]  Indiana Code Section 31-17-2-21 provides that a trial court may not modify an existing custody order unless (1) the modification is in the best interests of the child, and (2) there has been a substantial change in one or more statutory factors that are outlined in Indiana Code Section 31-17-2-8.[2] Those factors are:

> (1) The age and sex of the child.
> (2) The wishes of the child's parent or parents.

---

[2] Although this case began as a dispute over Mother's relocation request, the parties appear to agree that Father's petition to modify custody was an independent filing made after the fact, and thus was not a request stemming from the relocation. Therefore, we need not address the statutory interplay between Indiana Code Section 31-17-2.2-1 (the Relocation Statute) and Indiana Code Section 31-17-2-21 (the Modification Statute). *See Jarrell v. Jarrell*, 5 N.E.3d 1186, 1192 (Ind. Ct. App. 2014) (noting that when a trial court reviews a request to modify custody "stemming from" a parent's plan to relocate, the court must assess the "Relocation Factors," which incorporate the factors from the Modification Statute while also adding some new ones), *trans. denied*.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4) The interaction and interrelationship of the child with:
    (A) the child's parent or parents;
    (B) the child's sibling; and
    (C) any other person who may significantly affect the child's best interests.
(5) The child's adjustment to the child's:
    (A) home;
    (B) school; and
    (C) community.
(6) The mental and physical health of all individuals involved.
(7) Evidence of a pattern of domestic or family violence by either parent.
(8) Evidence that the child has been cared for by a de facto custodian ....

Ind. Code § 31-17-2-8.

[10] In interpreting section 31-17-2-21, this Court has held that "all that is required to support modification of custody ... is a finding that a change would be in the child's best interests, a consideration of the factors listed in I.C. § 31–17–2–8, and a finding that there has been a substantial change in one of those factors." *Nienaber v. Nienaber*, 787 N.E.2d 450, 456 (Ind. Ct. App. 2003). Here, it appears that neither party requested special findings under Indiana Trial Rule 52(A) and that the trial court entered its findings sua sponte. "As to the issues covered by the findings, we apply the two-tiered standard of whether the evidence supports the findings, and whether the findings support the judgment." *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). We review any remaining issues under the general judgment standard, where the judgment will be affirmed if it can be

sustained on any legal theory consistent with the evidence. *Id.* "[W]e may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court." *Stone v. Stone*, 991 N.E.2d 992, 998 (Ind. Ct. App. 2013). Clear error occurs when the appellate court's review of the evidence most favorable to the trial court's judgment leaves us firmly convinced that a mistake has been made. *Quinn v. Quinn*, 62 N.E.3d 1212, 1220 (Ind. Ct. App. 2016).

[11] Mother first contends that the trial court's findings "fail to support its judgment that a substantial change in circumstances had occurred justifying modification of custody." Appellant's Br. at 30. We disagree. Although the trial court made specific findings regarding all the relevant factors listed in Indiana Code Section 31–17–2–8 to support its judgment, the evidentiary support for many of which Mother challenges, the trial court need only find that there has been a substantial change in one of those factors to support a custody modification. *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 460 (Ind. 2009) (noting that a substantial change in any one of the statutory factors will suffice).

[12] Here, Father presented ample evidence that since the original custody order, there had been a substantial change in the interaction and interrelationship of C.M. with others, including Father and C.M.'s extended family. *See* Ind. Code § 31–17–2–8(4). Father testified that Mother's relocation to Richmond moved C.M. more than one and one-half hours from him, as well as from both sides of C.M.'s extended family with whom C.M. used to see regularly and with whom C.M. shares a close relationship. Other than Mother, C.M. has no family

members in the Richmond area. Father testified that the move hindered his ability to attend his son's extracurricular activities, and further hindered C.M.'s ability to maintain relationships with extended family. We observe that a change in circumstances "must be judged in the context of the whole environment, and the effect on the child is what renders a change substantial or inconsequential." *In re Paternity of B.D.D.*, 779 N.E.2d 9, 14 (Ind. Ct. App. 2002). Based upon the evidence presented, we cannot say that the trial court clearly erred in finding that the effect of Mother's move on the interaction and interrelationship of C.M. with Father and extended family was consequential and substantial, justifying a modification in custody.

[13] Moreover, Father presented additional evidence of changed circumstances that, along with moving C.M. to Richmond, Mother recently married an individual who has had significant involvement with the legal system, both criminal (thirteen cases) and civil (seventeen cases), including a theft charge, two protective orders, and convictions for invasion of privacy. The GAL testified that these were issues of concern that Mother failed to disclose to the GAL and that would have possibly changed the GAL's first report to the trial court. This evidence also supports the trial court's finding that a substantial change in circumstances had occurred to support a custody modification.

[14] Mother maintains that the trial court's findings do not support its judgment that modification of both physical and legal custody is in C.M.'s best interests. While we need not go into each specific instance cited by the trial court, significant evidence was presented regarding Mother's lack of communication

with Father and her interference with and/or failure to accommodate his parenting time. The record indicates that Mother was increasingly making decisions regarding C.M. without advising and/or consulting with Father, with many of those decisions negatively affecting C.M., Father's relationship with C.M., and Father's ability to exercise parenting time with C.M. The trial court took judicial notice of previous hearings, and its own file, to note Mother's dismissive and hostile attitude toward co-parenting, while also taking note of Father's general attitude of cooperation. Mother has also engaged in contentious behavior toward Father during his parenting time (unsubstantiated child abuse allegations) that was undoubtedly harmful to C.M. and C.M.'s relationship with Father. While "lack of cooperation or isolated acts of misconduct by a custodial parent cannot serve as a basis for the modification of child custody," a parent's "behavior towards another parent, which places a child's welfare at stake, can support" such a modification. *Hanson v. Spolnik*, 685 N.E.2d 71, 78 (Ind. Ct. App.1997), *trans denied*. The trial court here determined that these parties "are no longer able to communicate effectively" regarding C.M., primarily due to Mother's behavior toward Father. Appealed Order at 7. In sum, the trial court found that, while both parents love C.M. and are fit and proper parents, it is in C.M.'s best interests to have a positive relationship with both parents and that this goal can best be achieved by Father having primary physical custody and sole legal custody.

[15] Mother suggests that the trial court lacked the authority to "sua sponte" modify the joint legal custody arrangement because Father did not request it in his

petition to modify. Appellant's Br. at 45. To be clear, we have long held that a trial court is not precluded from entering a custody arrangement not specifically advanced by either party so long as that custody arrangement is in the child's best interests. *Richardson v. Richardson*, 34 N.E.3d 696, 704 (Ind. Ct. App. 2015). Mother directs us to *In re Paternity of W.R.H.*, 120 N.E.3d 1039 (Ind. Ct. App. 2019), in which a divided panel of this Court reversed a trial court's modification of legal custody, concluding that the issue of legal custody was not properly before the trial court during the hearing on Mother's request to relocate absent a specific request by Father, who sought modification of physical custody stemming from the relocation. *Id*. at 1043. Specifically, the majority concluded that, pursuant to the Relocation Statute, Indiana Code Section 31-17-2.2-1, legal custody is not "necessarily" at issue at the hearing on a party's request to relocate and therefore Mother did not have notice that the court could modify legal custody. *See id.* at 1042 ("To be sure, physical custody and/or parenting time will be at issue virtually any time a parent is looking to move a significant distance. But the same is not necessarily true of legal custody."). We find *W.R.H.* and its reasoning wholly inapplicable here.

[16] First, unlike this case, *W.R.H.* involved a hearing on a request to relocate, and a petition for custody modification directly stemming from that request. Thus, *W.R.H.* specifically required interpretation of the language of the Relocation Statute. As noted earlier, the parties agree that Father's petition to modify did not stem from Mother's request to relocate, and therefore consideration and/or

interpretation of the language of the Relocation Statute would be inappropriate here.[3]

[17] In any event, we disagree with the majority's broad statement in *W.R.H.*, upon which Mother relies, that "the requests of the parties frame the issues for the [relocation] hearing, which may or may not include the issue of legal custody." *W.R.H.*, 120 N.E.3d at 1042. Instead, we agree with the reasoning of this author's dissenting opinion on the observation that the child's best interest is the touchstone of any custody determination and that the trial court's discretion is "unfettered by the contents of a party's motion for the hearing." *Id*. at 1044 (Crone, J., dissenting). We conclude that the issue of legal custody was properly before the trial court here on Father's petition to modify pursuant to the Modification Statute, and the court did not clearly err in sua sponte modifying legal custody.

[18] After thoroughly reviewing the entirety of Mother's arguments on appeal, we discern that she is simply asking for this Court to reweigh the evidence and reassess witness credibility in her favor, which we will not do. As noted above, the trial court took judicial notice of its own interactions with these parties in determining that both physical and legal custody modification were warranted. The value of the trial court's close proximity to the parties and the issues in

---

[3] As aptly noted by Father, the Relocation Statute arguably focuses more on the physical location of the child, while the Modification Statute, Indiana Code Section 31-17-2-21, "is triggered by a multitude of factors which make the current [physical and/or legal] custody arrangement no longer workable." Appellee's Br. at 24.

child custody cases cannot be overstated, and we are mindful that the trial court was in a better position than we are to make a decision on the merits. *Pawlik v. Pawlik*, 823 N.E.2d 328, 329-30 (Ind. Ct. App. 2005), *trans. denied*. Our review of the evidence most favorable to the trial court's judgment has not left us firmly convinced that a mistake has been made. We conclude that the trial court's modification order is neither clearly erroneous nor an abuse of discretion.

## Section 2 – We decline to address the moot issue of whether the trial court abused its discretion in denying Mother's request to relocate.

[19] Mother also asserts that the trial court abused its discretion in denying her request to relocate. As we concluded above, the trial court did not err in modifying physical and legal custody of C.M.; therefore, inasmuch as Mother is attacking the validity of the trial court's prior denial of her request to relocate with C.M., we find that issue moot. Mootness arises when an issue "has been ended or settled, or in some manner disposed of, so as to render it unnecessary to decide the question involved." *In re Custody of M.B.*, 51 N.E.3d 230, 233 (Ind. 2016) (citation omitted). Moreover, an issue is deemed moot when no effective relief can be rendered to the parties before the court. *In re F.S.*, 53 N.E.3d 582, 590 (Ind. Ct. App. 2016). Here, even if we were to find in Mother's favor on the relocation issue, we are unable to render her any effective relief. In other words, a finding that the trial court abused its discretion on the relocation issue would have zero effect on the fact that Mother no longer has primary physical custody of C.M. based upon a ruling by the trial court that we

affirm herein.  Accordingly, we decline to address the merits of the relocation issue.[4] *See Francies v. Francies*, 759 N.E.2d 1106, 1110-11 (Ind. Ct. App. 2001) (noting that appellate court will not reverse a lower court's determination on a moot issue where absolutely no change in the status quo will result), *trans. denied*.  We affirm the trial court's modification order.

[20] Affirmed.

Bailey, J., and Altice, J., concur.

---

[4] Mother's counsel essentially conceded the mootness of the relocation issue at the custody modification hearing.  Tr. Vol. 2 at 160-61.